[L. A. No. 2303.　Department One.—August 21, 1909.]

## C. H. FULLER et al., Appellants, v. FRED J. SMITH, Respondent.

VENDOR AND VENDEE—PAYMENT OF PURCHASE PRICE CONTINGENT ON SUCCESSFUL OUTCOME OF LITIGATION—PROVISION FOR RECONVEYANCE.—An agreement, executed cotemporaneously with a deed of land, whereby the grantee undertook, among other things, to prosecute to a successful conclusion a certain litigation affecting water-rights claimed to be riparian to such lands, and in that event to pay the purchase price as provided for therein, is construed, and it is held, that a further provision in the agreement, to the effect that in the event of an unsuccessful termination of the litigation the grantee shall reconvey the land was intended solely for the benefit of the grantee and could be and was waived by him.

APPEAL from a judgment of the Superior Court of Riverside County.　F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, and Freeman, Summerlin & Laughlin, for Appellants.

John G. North, for Respondent.

ANGELLOTTI, J.—This is an appeal by plaintiffs from a judgment entered on the pleadings on motion of and in favor of defendant.

The action was one to obtain a decree declaring the amount due on certain notes executed by C. H. Fuller to defendant, the payment of which notes was secured by a mortgage on certain lands alleged to have been conveyed by defendant to him, and requiring defendant upon the payment of such amount within the time to be fixed by the decree to deliver up said notes and mortgage with a release of the mortgage executed and acknowledged so that it could be recorded. The plaintiffs other than C. H. Fuller were his partners and interested with him in the transaction, but the legal title was taken in the name of C. H. Fuller. In all the matters referred to herein, C. H. Fuller acted in his individual name, but for himself and his co-plaintiffs, and they were at all

CLVI Cal.—12

times equally interested with him therein. On November 4, 1907, C. H. Fuller executed and delivered to his co-plaintiffs a deed of conveyance, conveying to each an undivided one third of the property.

Defendant's claim is, that, under the terms of the agreement between the parties, by reason of certain facts alleged in his cross-complaint, and either not denied or expressly shown by the allegations of plaintiffs' answer thereto, defendant is entitled to a reconveyance from plaintiffs of all the land described in his deed to C. H. Fuller, upon the delivery up by him of said notes and mortgage. No part of the principal sum evidenced and secured thereby has been paid. The trial court adopted this theory of defendant, and its judgment requiring such reconveyance was necessarily based thereon. If this theory be not supported by the admitted facts shown by the pleadings, it is manifest that the judgment in favor of defendant must be reversed, for admittedly plaintiffs' complaint states facts warranting the relief sought by them, unless they are without the right to retain the land, paying the amount due therefor. In view of our conclusion as to the true intent and meaning of the written agreement made by C. H. Fuller and Smith at the time of the execution of the deed, notes, and mortgage, it will be necessary to consider but one of the many propositions suggested in the briefs of counsel.

The land in question consisted of several parcels containing in the aggregate eight hundred acres, being a portion of the Jurupa Ranch in Riverside County. On May 31, 1900, they were, and had been for a long time, in the possession of plaintiffs under a lease from Smith, at a rental of eight hundred dollars per annum less taxes. The fair and reasonable value of said land at such time did not exceed forty thousand dollars, and was alleged by plaintiffs to be only twenty-five thousand dollars. At that time, plaintiffs had already constructed a canal to convey water from the Santa Ana River to and upon these lands so leased by them from Smith, and also upon other lands in the same vicinity owned by them, claiming that all of such lands were riparian to such river. There had then been commenced and was pending in the superior court of Riverside County an action, being case No. 2148 therein, in which the Anaheim Union Water Company

and the Santa Ana Valley Irrigation Company were plaintiffs, and the plaintiffs herein and Smith were defendants, the object of which action was to obtain a decree perpetually restraining the defendants from diverting by means of said ditch, or by any other means, the waters of said Santa Ana River to or upon any portion of a four-hundred-acre tract of the Smith land so leased to plaintiffs, or a nine-hundred-acre tract in which plaintiffs were interested as owners, the theory of the plaintiffs therein being that said lands were not riparian to the said Santa Ana River.

On said May 31, 1900, Smith executed and delivered to C. H. Fuller a deed of conveyance of the land in question, the instrument being in the usual form of a grant, bargain, and sale deed, and the consideration expressed therein being the sum of forty thousand dollars. This deed was duly recorded.

As a part of the same transaction, C. H. Fuller executed and delivered to Smith nine several promissory notes amounting in the aggregate to forty thousand dollars, the entire purchase price of said premises, and also a mortgage covering said property to secure the payment of said notes. The notes were four for one thousand dollars each, payable respectively two, three, four, and five years after date, and five for $7,200 each, payable respectively six, seven, eight, nine, and ten years after date, and each provided for interest at six per cent per annum, payable semi-annually. The mortgage was duly recorded.

At the same time and as a part of the same transaction, a written agreement was executed by C. H. Fuller and Smith. This agreement recited the cotemporaneous execution of the deed and mortgage, the pendency of the action brought by the Anaheim Union Water Company et al. against the parties to the agreement and others, that Smith desires to sell said lands and their appurtenances, and that said Fuller desires to buy the same, "provided a riparian right to the use of the waters of the Santa Ana River through said canal for the irrigation of the said lands in whole can be established by decree of court in said suit, or suits, as hereinafter provided." It was then mutually agreed: That the deed shall "be delivered absolutely" to Fuller, "subject, however, to the mutual covenants and agreements hereinafter contained," and that

Smith should receive the notes and mortgages, "subject, however, to the mutual covenants and agreements hereinafter contained"; that said deed and mortgage should be recorded as soon as may be; that the time of payment of said principal and interest "shall be suspended" during the time any injunction may be in force in said action, enjoining any of said parties from using the waters of the Santa Ana River for irrigation on said lands through said canal, provided that such suspension shall not be extended beyond five years from May 31, 1900, and that nothing shall be so construed as to extend the time for the full payment of the notes beyond ten years from May 31, 1900; that during any such period of suspension, Fuller shall pay an annual rental for the land of eight hundred dollars less taxes; that Fuller will, at his own cost and expense but for both Smith and himself, diligently press to a judicial determination the matters involved in said action, take an appeal to the supreme court from any judgment or portion of a judgment favorable to plaintiffs therein and against defendants therein, and prosecute said appeal or appeals with due diligence to final decision, and "prosecute the defense of said suit" until a final judgment is rendered and entered by the supreme court . . . "settling all controversies involved in said cause"; that Smith will not make any agreement with the plaintiffs in said action which would waive or have the effect of waiving any right of Fuller or his co-defendants in said cause to so take such water; that no compromise is to be made by Fuller, of any of the matters involved in said action, without the written consent of Smith; that no order or judgment by stipulation or consent is to be made except one adjudicating in favor of the defendants in said action all of the matters contested therein; that should Fuller make any such compromise or waiver of his rights or those of his co-defendants "then said promissory notes and mortgage . . . shall be absolutely valid and enforceable without defalcation or delay, and payable at the times in said notes and mortgage written." Then follows the provision upon which Smith mainly relies, and which is as follows:—

"It is further agreed between the parties hereto that in case said party of the second part shall fail to secure a judgment or decree of court, entitling said party of the second

part or his assigns to use the waters of said Santa Ana River, through said canal, upon said lands described in said exhibits, then in that case the said party of the second part or his assigns shall reconvey by grant, bargain and sale deed to the record holder of said mortgage all of said lands described in said exhibits and the said party of the first part or his assigns shall, upon the tender of said deed conveying said lands as aforesaid in the manner hereinafter provided, execute an instrument in such form and manner as to entitle it to be recorded in the office of the county recorder of Riverside County, California, satisfying the lien of said mortgage and the debt thereby secured, and at the same time deliver up to the said party of the second part, or his assigns, the notes and mortgage hereinbefore described and referred to as 'Exhibit B.' The said tender of said deed shall be made by leaving the same with the said county recorder of said Riverside County to be delivered to said mortgagee upon the delivering up of said satisfaction of mortgage and notes to said recorder to be by him delivered to said party of the second part hereof, or his assigns, as herein stipulated."

Then follows a provision to the effect that Fuller may "at any time" obtain a release of said mortgage of portions of said land, of not less than one hundred acres at any one time, by paying at the rate of seventy-five dollars per acre for lands not in alfalfa and at the rate of one hundred dollars per acre for lands in alfalfa. This was followed by provisions as follows:—

"It is further agreed between the parties hereto that except it shall be adjudged in said suit and decreed by judgment of said court that all of the said lands described in said exhibits hereto attached are not riparian to said Santa Ana River and are not entitled to the use of the waters of said Santa Ana River, through said canal, the said promissory notes and mortgage described in said exhibits shall then and in that case be valid and collectible as though this agreement never existed, except as hereinbefore provided as to suspended payments of interest. . . . It is further understood and agreed between the parties hereto that the essence of this contract is that said notes referred to in this agreement shall not become collectible unless the said defendants shall succeed in securing the right to use at least one inch of water meas--

ured under a four-inch pressure upon said land, for each and every five acres of said land, through said Fuller ditch."

We have omitted to mention several other provisions which appear to us to throw no light on the question of the proper construction of this agreement. This agreement was signed and acknowledged by C. H. Fuller and Smith, but was not recorded.

Fuller faithfully complied with all the provisions of this agreement as to the defense of said action. The action was tried in the superior court, with the result that on the twelfth day of November, 1903, judgment was entered therein restraining each of the defendants therein from diverting by means of said Fuller ditch any of the usual and ordinary flow of the waters of the Santa Ana River upon any portion of said four-hundred-acre tract, or of said nine-hundred-acre tract. A motion for a new trial was made by Fuller on behalf of the defendants, and this motion was denied by the trial court. Fuller thereupon appealed from such judgment and order to this court, and on January 19, 1907, said judgment and order were affirmed by this court. A petition for a rehearing was denied on February 18, 1907, and said judgment became final. We shall assume here that it was thus finally determined that Fuller had failed to secure the judgment or decree contemplated by the provision of the agreement relative to reconveyance which we have hereinbefore quoted, and that the event upon the happening of which a reconveyance should or might be made and the notes and mortgage be canceled had then occurred.

Plaintiffs have been in possession of said premises ever since May 31, 1900. They have made permanent improvements thereon in fencing, leveling, and preparing the same for husbandry, and buildings for the proper use and enjoyment thereof. They have prepared and planted to alfalfa four hundred acres thereof. Since the prohibitory judgment was made by the superior court, November 12, 1903, they, at their own cost and at an expense of over six thousand dollars, bored wells on the land and erected, in connection with said wells, a pumping-plant which is capable of producing and which does produce three hundred inches of water measured under a four-inch pressure, which water has been used for irrigation on said land in lieu of the waters of the Santa Ana

River formerly used thereon. Up to November 30, 1903, they paid all interest which became due on said notes. Thereafter, and up to November 30, 1906, because of the judgment enjoining the use of the water from the Santa Ana River, they paid eight hundred dollars per year, less the taxes.

After the affirmance of such judgment by this court, plaintiffs notified defendant that they desired to pay in full the aforesaid notes and mortgage according to the tenor and effect thereof. On September 13, 1907, defendant gave to plaintiffs' attorney a written statement of the amount that he claimed to be due, saying therein that he had sent to England for the notes and that they would be obtained within a few days, and he expected "prompt payment" as soon as the notes were ready for delivery. In this statement he claimed that the interest from November 30, 1903, should be paid. Plaintiffs at once objected to this, claiming that in view of the fact that they had been enjoined from the use of the waters of the Santa Ana River ever since that date, they were required by the agreement to pay, in addition to the principal, only eight hundred dollars per annum, less taxes. Some discussion was had by the parties relative to submitting the matter to arbitration, and while the further disposition of the matter was pending undetermined, Smith, on November 25, 1907, notified Fuller that the contingency had arisen upon which he was obligated to reconvey the property to him, and demanded such reconveyance, offering to deliver up the notes and mortgage upon receipt of the reconveyance. He concluded his notice as follows:—

"I have been willing heretofore to accept payment of the principal and interest on the said notes and mortgage in full and allow you to retain the property, but you have failed to make such payment. There seems to be no way left for me but to make the demand and offer which I hereby make and in case of refusal, to proceed to enforce the reconveyance of the said property."

On December 2, 1907, plaintiffs, by instrument in writing, dated November 30, 1907, notified Smith that they, as owners of the premises, declared each of said notes to be due and payable, and offered to pay forty thousand dollars, together with eight hundred dollars, less $458.08 taxes, in lieu of interest to November 30, 1907, upon delivery up of said notes

and a proper satisfaction of the mortgage. In their complaint in this action, filed December 4, 1907, plaintiffs declare that they have elected and do now elect to pay said notes and mortgage in full according to the terms and effect thereof and of the agreements aforesaid, and that they have heretofore waived and do now waive all right to reconvey said land in lieu of payment of said notes and mortgage.

There would be much force in the contention of learned counsel for defendant as to the meaning and intent of the provision in the agreement relative to reconveyance, if that provision stood alone, and we had nothing else from which to determine its meaning. This, however, is not the situation. Under familiar rules, we are required to take the whole contract into consideration in determining the exact intent of the parties as to any particular provision, and if we can reasonably do so we must make of it all a consistent whole. When we consider the agreement of these parties in that way, it appears very clear to us that the provision as to a reconveyance, which constitutes the whole basis of defendant's claim, was a provision inserted solely for the benefit of the purchaser, which he, having complied with the other provisions, might enforce or not as he saw fit, and that it should be read just as though the word "may" had been written instead of the word "shall" in the clause providing that if the purchaser shall fail to secure a certain judgment he "shall reconvey," etc. The provision itself indicates this very strongly in the stipulation that Smith shall be called upon to do anything in the matter of delivering up the notes and executing a release of the mortgage, only upon the tender of a deed of reconveyance by Fuller, to be made by him in the manner carefully prescribed. Taking the whole contract together, it seems very clear, as we have said, that the provision was one solely for the benefit of Fuller, which he had the absolute right to waive. The price agreed on, forty thousand dollars, was admittedly the full value of the land, even with the right to take water for irrigation purposes thereon from the Santa Ana River. The agreement shows that Smith desired to absolutely sell the land for that price, and to free himself from the burden and expense of any litigation in regard to the water-rights thereon. It further shows that Fuller was not willing to be bound to take it if

such water could not be had, but was willing to take it with the understanding that if, making all proper and diligent effort in that behalf at his own expense, he could not obtain a final judicial determination that he was entitled to such water for the land, he might rescind the contract of purchase. The written agreement between the parties, except as to the provisions relative to suspension of interest, annual rental during such suspension, the release of an existing mortgage, the conditions as to partial release from the lien of the mortgage given by Fuller to Smith, and the application of damages recovered on any injunction bond, was, practically, simply an agreement reserving to Fuller the right to rescind the contract of purchase upon a certain contingency on certain conditions. The conditions were that Fuller should diligently and at his own expense defend to the end, without compromise of any kind, the pending proceeding brought to obtain a decree depriving the land of such water, and any other suit instituted by either of the same plaintiffs for the same purpose within three years of the date of the agreement. The contingency was the failure of Fuller, notwithstanding his full compliance with the conditions, to obtain the right by judgment in said action or actions, to use said waters upon said land to the extent of "at least one inch of water measured under a four-inch pressure upon said land, for each and every five acres of said land, through said Fuller ditch," as stated in the last stipulation of the agreement. The provision as to the limitation of the period of suspension of interest, the maximum being ten years, the provision against any compromise of the action by Fuller *under penalty of being compelled to retain the land and pay the agreed purchase price* according to the terms of the notes and mortgage, and the provision giving Fuller the right "at any time" to obtain releases of the mortgage as to lots of not less than one hundred acres on payment of a specified rate per acre, show very clearly the intention of the parties that Fuller had the absolute right to hold the land for the consideration agreed on regardless of the result of the litigation concerning the water. There is no foundation for any theory that Smith could be advantaged by a favorable determination of the litigation to the extent stipulated, otherwise than that by reason of such determination Fuller would be precluded from rescinding

and the sale would stand. His whole object appears to have been to most carefully limit the right of Fuller to rescind to the single contingency specified, and to guard against the bringing about of that contingency by any act or failure on the part of Fuller himself. The theory of learned counsel for defendant as to the effect of the provision regarding reconveyance would, in our judgment, make it inconsistent with the whole spirit of the contract. It is impossible to conceive of any good reason why Smith, desiring to absolutely sell the land for forty thousand dollars, should wish to reserve to himself the privilege of taking it back in the event of a decree depriving it of certain alleged water-rights, and thus unfavorably affecting its value. We think that the contract manifestly shows that he was not stipulating for any such right, but that he was, in fact, simply conferring the right of rescission in a certain contingency on Fuller, and prescribing the manner in which that right was to be exercised.

The allegations of the pleadings show a practical construction of this agreement by the parties similar to the construction that we place upon it. As to Fuller and his associates, there can be no doubt in this regard. The development of water thereon by them at great expense, the cultivation and improvement of the land, and their acts following the final adjudication as to the water of the Santa Ana River, practically demonstrate their understanding of the contract. Smith appears to have regarded it in the same way and to have acknowledged the right of plaintiffs to hold the land notwithstanding the result of the litigation, until after he and the plaintiffs differed as to the amount due on the notes, in view of the provisions as to suspension of interest during the time that plaintiffs were deprived by injunction of the use of the water from the Santa Ana River. But we do not rest at all upon this in our conclusion, for we are satisfied that the written instruments upon their face, taken as a whole, clearly show the understanding and intention of the parties to be as we have stated it.

If we are correct in our conclusion as to the proper construction of the contract, the judgment given on the pleadings must be reversed. The order appointing a receiver is a part of the judgment and will fall with it.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Shaw, J., and Sloss J., concurred.

Hearing in Bank denied.